UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

JASON DODD,

  Petitioner,

  v.                                    Case No.   17-CV-1021-SCD

MICHAEL DITTMAN,

  Respondent.

## DECISION AND ORDER

The petitioner filed this habeas corpus action on July 24, 2017. Magistrate Judge Duffin screened the petition and concluded there were multiple viable and exhausted claims in the petition. ECF No. 7. The case was later assigned to District Judge Pepper. More recently, the parties consented to the jurisdiction of the undersigned magistrate judge. For the reasons given below, the petition will be denied.

## BACKGROUND

A Milwaukee County jury found the petitioner guilty of an armed robbery, as party to a crime, committed at an auto parts store.[1] Witnesses reported seeing a man wearing latex gloves and sunglasses demanding money while armed with a gun. The man then fled in a green SUV. When police later located the SUV, they arrested the driver, a man named Jackson. Examination of Jackson's cellphone revealed a large number of calls between

---

[1] The facts are taken largely from the court of appeals' opinion, ECF No. 14-7.

Jackson and a contact named "Jason," who police later discovered to be Jason Dodd, the petitioner in this action.

One of the witnesses, a store employee, testified that he found a pair of gloves behind the counter at the store. After he threw them away, he saw police remove the gloves from the garbage. The state crime lab found that the petitioner's DNA was on both of the gloves. A different store employee picked the petitioner out of a photo array, identifying him as the man who robbed him. Based on this and other evidence, a jury convicted the petitioner, and the court sentenced him to twelve years of imprisonment. It later denied a motion for postconviction relief. The court of appeals affirmed, and the Wisconsin Supreme Court denied his petition for review. This habeas action followed.

## ANALYSIS

This habeas petition is subject to the provisions of the Antiterrorism and Effective Death Penalty Act, known as AEDPA. "The Antiterrorism and Effective Death Penalty Act of 1996 modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002).

Habeas is not simply another round of appellate review. 28 U.S.C. § 2254(d) restricts habeas relief to cases in which the state court determination "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States" or "a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."

A judgment is "contrary to" Supreme Court precedent if the state court "contradicts the governing law set forth in [Supreme Court] cases." *Coleman v. Hardy*, 690 F.3d 811, 814 (7th Cir. 2012). A state-court decision is an "unreasonable application of" clearly established law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*. As for the determination of the facts, federal courts will not "characterize these state-court factual determinations as unreasonable 'merely because [we] would have reached a different conclusion in the first instance.' Instead, § 2254(d)(2) requires that we accord the state trial court substantial deference. If '[r]easonable minds reviewing the record might disagree' about the finding in question, 'on habeas review that does not suffice to supersede the trial court's . . . determination.'" *Brumfield v. Cain*, 576 U.S. 305, 135 S. Ct. 2269, 2277 (2015) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010) (other citations omitted)).

The scope of federal review of state court decisions on habeas is "strictly limited" by 28 U.S.C. § 2254(d)(1). *Jackson v. Frank*, 348 F.3d 658, 661 (7th Cir. 2003). The unreasonable application standard is "a difficult standard to meet." *Id*. at 662. Even an incorrect or erroneous application of the federal precedent will not justify habeas relief; rather, the state court application must be "something like lying well outside the boundaries of permissible differences of opinion." *Id*. at 662 (internal citation omitted).

1. **Ineffective Assistance – Failure to Investigate Alibi Witness**

The petition alleges several reasons that trial counsel was ineffective. The right to assistance of counsel means the right to *effective* assistance of counsel. *McMann v. Richardson*, 397 U.S. 759, 771, n. 14 (1970). As the parties and the state courts recognize, the lodestar for

3

ineffective assistance claims is *Strickland v. Washington*, 466 U.S. 668 (1984). There, the Supreme Court held as follows:

> A convicted defendant's claim that counsel's assistance was so defective as to require reversal of a conviction or death sentence has two components. First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

466 U.S. at 687. The Court elaborated that "scrutiny of counsel's performance must be highly deferential. It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." *Id.* at 689.

When the *Strickland* analysis arises in the habeas context, a court's review of a state court's decision is "doubly deferential." *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011). That is, the court must first take "a highly deferential look at counsel's performance," in which "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. Then, the court must view the petitioner's claim through the "deferential lens of § 2254(d)." *Cullen*, 563 U.S. at 190 (quoting *Knowles v. Mirzayance*, 556 U.S. 111, 121 n.2 (2009)). That means that the "pivotal question" is not whether "defense counsel's performance fell below *Strickland*'s standard," but whether "the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. 86, 101 (2011). On top of this double deference,

4

courts must bear in mind that "because the *Strickland* standard is a general standard, a state court has even more latitude to reasonably determine that a defendant has not satisfied that standard." *Mirzayance*, 556 U.S. at 123; *see also Harrington*, 562 U.S. at 101 ("The more general the rule, the more leeway courts have in reaching outcomes in case-by-case determinations."). As the Supreme Court emphasized in *Harrington*: "If this standard is difficult to meet, that is because it was meant to be." 556 U.S. at 123.

The petitioner first argues that counsel failed to investigate or call Yesenia Claypool as a witness. In a post-conviction filing, the petitioner included an affidavit from Claypool attesting to the petitioner's whereabouts at the time the crime was committed. Specifically, she asserted that the petitioner remained in bed with her into the afternoon hours on the days between April 29 to May 2. *See* ECF No. 1 at 14-15. Because the crime was committed at approximately 11:00 a.m. on April 29, her testimony would have bolstered the petitioner's argument that he was innocent. Despite being alerted to the existence of this alibi witness, counsel did not pursue the matter. The petitioner believes the state courts' treatment of this issue was "ridiculous." ECF No. 1 at 12-13.

The State argues that the petitioner has procedurally defaulted this issue by failing to present it to the Wisconsin Supreme Court in his petition for review. "Fair presentment requires the petitioner to give the state courts a meaningful opportunity to pass upon the substance of the claims later presented in federal court." *Boyko v. Parke*, 259 F.3d 871, 788 (7th Cir. 2001) (citing *Rodriguez v. Scillia*, 193 F.3d 913, 916 (7th Cir. 1999)). To satisfy this requirement, the petitioner must have placed both the operative facts and the controlling legal principles before the state courts. *Id.* "Thus, if a petitioner fails to assert in the state courts a particular factual basis for the claim of ineffective assistance, that particular factual basis may

5

be considered defaulted." *Pole v. Randolph*, 570 F.3d 922, 935 (7th Cir. 2009). "This means that the petitioner must raise the issue at each and every level in the state court system, including levels at which review is discretionary rather than mandatory." *Lewis v. Sternes*, 390 F.3d 1019, 1025–26 (7th Cir. 2004).

In his petition for review, filed by appellate counsel, the petitioner raised four arguments, all alleging ineffective assistance: he argued counsel was ineffective for failing to impeach a witness with prior convictions, for not objecting to gaps in the chain of custody, for not objecting to an impermissibly suggestive out-of-court identification, and for her silence during sentencing. ECF No. 14-8 at 2. The petition does not mention investigation of an alibi witness.

The petitioner does not dispute the fact of his procedural default. Instead, he recognizes that a federal habeas court may nevertheless consider a defaulted argument if the petitioner can show cause and prejudice for the default or a fundamental miscarriage of justice. *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). In that vein, the petitioner argues that his appellate counsel was ineffective for not raising the issue with the state supreme court. Specifically, he asserts that counsel incorrectly told him there was a limit on the number of issues the court would consider, and so he had to limit the issues presented to the four described above.

It is true in a general sense that "sub-par representation might supply cause for his procedural default of these claims." *Lewis*, 390 F.3d at 1026. However, because a defendant has no constitutional right to counsel at the state supreme court level of review, ineffective assistance at that level cannot itself supply the cause required to overcome the procedural default. The Seventh Circuit has confronted the issue head-on:

6

> Mr. Anderson has procedurally defaulted his ineffective assistance of counsel claim. To preserve this claim for habeas review, Mr. Anderson needed to present it to the Supreme Court of Illinois in his petition for discretionary review. In failing to present this claim to the Illinois courts, Mr. Anderson deprived the state courts of the first opportunity to review it. This failure resulted in a procedural default of his claim.
>
> Mr. Anderson argues that, because he had ineffective assistance of counsel in his petition to the Supreme Court of Illinois, there is "cause" for his failure to present his ineffective assistance of counsel claim in his petition for discretionary review to the Supreme Court of Illinois. The Supreme Court of the United States has held that "[a]ttorney error that constitutes ineffective assistance of counsel is cause." *Coleman v Thompson*, 501 U.S. 722, 753–54 (1991). However, "a criminal defendant does not have a constitutional right to counsel to pursue discretionary state appeals," *Wainwright v. Torna*, 455 U.S. 586, 587 (1982), and "the right to appointed counsel extends to the first appeal of right, and no further." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1987). In proceedings in which a petitioner does not have a constitutional right to counsel, "a petitioner cannot claim constitutionally ineffective assistance of counsel in such proceedings." *See Coleman*, 501 U.S. at 752–53. Mr. Anderson therefore had no constitutional right to counsel for his discretionary petition to the Supreme Court of Illinois, and he could not have received ineffective assistance of counsel for the failure of counsel to raise his ineffective assistance of counsel claim in his petition to the Supreme Court of Illinois. Mr. Anderson thus has procedurally defaulted his ineffective assistance of counsel claim, and he has not made a substantial showing of the denial of a constitutional right.

*Anderson v. Cowan*, 227 F.3d 893, 900–01 (7th Cir. 2000) (some citations omitted). Based on *Anderson,* counsel's performance with respect to the petition filed with the state supreme court cannot excuse a procedural default.

In the alternative, the petitioner also argues that he is actually innocent, invoking the "fundamental miscarriage of justice" exception to procedural defaults. Only in "the circumstance in which the habeas petitioner can demonstrate a sufficient probability that our failure to review his federal claim will result in a fundamental miscarriage of justice" may a federal habeas court review a procedurally defaulted claim that has not been excused by a demonstration of cause and prejudice. *Ward v. Hinsley*, 377 F.3d 719, 725 (7th Cir. 2004) (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000)). These kinds of claims involve

7

"extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey v. Zant*, 499 U.S. 467, 494 (1991).

Here, the petitioner's DNA was found at the crime scene on a pair of latex gloves consistent with the pair of gloves worn by the robber. Cellphone records showed that the petitioner had been in frequent contact (thirty-three contacts within a six-hour period) with Jackson, the driver of the getaway vehicle. There was a suggestive *absence* of contacts during the time of the robbery. *See* ECF No. 14-3 at 3. A store employee identified the petitioner in a photo array. Moreover, as the court of appeals noted, when asked at trial about his whereabouts on the day of the crime, the petitioner did not refer to the alibi witness. Had he actually been with Claypool, presumably he would have said so. In short, this is not the kind of case in which the miscarriage of justice exception would reasonably be invoked. The argument is procedurally defaulted and no showing of cause or a miscarriage of justice has been made.

**2. Ineffective Assistance – Failure to Impeach Key Witness with Prior Convictions**

The petitioner next argues that his counsel was ineffective because she failed to impeach one of the State's witnesses, H.P., who had three prior convictions. He states that his attorney had no strategic reason for failing to inquire about H.P.'s convictions, and the witness was a key factor, and even a "star witness," in his conviction. ECF No. 1 at 25.

The court of appeals, echoing the trial court, found no ineffective assistance. Both courts cited *Strickland v. Washington,* 466 U.S. 668, 687 (1984), noting that the test for assessing counsel's performance is whether the representation fell below objective standards of reasonableness. The court of appeals found that H.P. was a disinterested witness who had no stake in the outcome and no longer even worked at the store that was robbed. His testimony

8

Case 2:17-cv-01021-SCD   Filed 05/18/20   Page 8 of 18   Document 30

was also consistent with that of the other witness, the store manager known as J.S. Finally, the court found that the petitioner had not shown a reasonable probability that the outcome of his trial would have been any different.

The state courts did not unreasonably apply *Strickland*. The fact that the witness might have had prior convictions *could* have partially undermined his credibility, but the fact remains that there is no plausible theory explaining why the witness would make anything up under these circumstances. It is pure speculation to believe that a juror would discredit his testimony based on prior convictions when video evidence and the testimony of J.S. corroborated much of his story. Because it is doubtful that impeachment of the witness would have had any practical impact, counsel's decision not to bring up the prior convictions cannot be said to be deficient.

### 3. Ineffective Assistance – Sentencing

Next, the petitioner asserts that his trial counsel's failure to participate in his sentencing was so complete that prejudice should be presumed. He states that, apart from stating that her client had already been punished by revocation, counsel remained silent during the hearing. She did not meet with him about the sentencing or otherwise advocate for any lesser sentence. The petitioner believes this total abandonment warrants an analysis under *United States v. Cronic*, 466 U.S. 648 (1984), rather than *Strickland*. Under *Cronic,* a defendant does not have to show that counsel's performance resulted in prejudice; instead, if counsel "entirely fails to subject the prosecutor's case to meaningful adversarial testing," prejudice is presumed. *Id.* at 659. Nearly twenty years later, the Supreme Court clarified that the *Cronic* standard comes into play only when counsel's failure was a "complete" failure, as opposed to failures manifested at various "specific points" in the proceedings:

> Respondent argues that his claim fits within the second exception identified in *Cronic* because his counsel failed to "mount some case for life" after the prosecution introduced evidence in the sentencing hearing and gave a closing statement. We disagree. When we spoke in *Cronic* of the possibility of presuming prejudice based on an attorney's failure to test the prosecutor's case, we indicated that the attorney's failure must be complete. We said "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing." *Cronic, supra*, at 659 (emphasis added). Here, respondent's argument is not that his counsel failed to oppose the prosecution throughout the sentencing proceeding as a whole, but that his counsel failed to do so at specific points. For purposes of distinguishing between the rule of *Strickland* and that of *Cronic*, this difference is not of degree but of kind.

*Bell v. Cone*, 535 U.S. 685, 696–97 (2002) (some citations omitted). Since then, the Seventh Circuit has also recognized that *Cronic* has not generally been applied when counsel fails to introduce evidence at a sentencing hearing. "[I]n light of *Bell* it is most apt to say that counsel's failure was not complete, but occurred 'at specific points' in the proceeding. As such, we are satisfied that *Strickland* is the appropriate governing precedent." *Barrow v. Uchtman*, 398 F.3d 597, 604 n.4 (7th Cir. 2005). And, in *Miller v. Martin*, 481 F.3d 468, 473 (7th Cir. 2007), the court noted that "[i]n the wake of *Bell*, courts have rarely applied *Cronic*, emphasizing that only non-representation, not poor representation, triggers a presumption of prejudice." Because I conclude that counsel's performance here was not a complete abdication of the advocate's role, *Strickland* governs rather than *Cronic*. *Cf. Miller,* 481 F.3d at 473 (applying *Cronic* after lawyer stated that neither he nor his client would be participating in the proceedings.)

The petitioner's portrayal of counsel as being essentially silent during sentencing is an exaggeration. His lawyer appeared at the sentencing and made an argument on his behalf, however brief. The argument's brevity, however, must be placed in context. Before defense counsel spoke, the prosecutor pointed out that "the facts of the case are fairly straightforward in terms of gunmen coming into the store pointing the gun getting money out of the till, and

10

running out of the store." *See* ECF No. 14-17 at 2-3. "There's not much to say about this," he added. *Id.* at 3. The prosecutor then explained that the petitioner had committed a very similar armed robbery in 2002 and had been on extended supervision at the time of the latest robbery. Because the petitioner had received seventeen years on the previous conviction, the prosecutor believed he should receive more than that now: "if you got 17 last time and you do another one while you are out on E.S., the numbers should then be bigger." ECF No. 14-17 at 4. That was the essence of the prosecutor's argument—no more than a few minutes discussing what he viewed as a "straightforward" case.

Defense counsel then spoke. She first noted that the petitioner was due 144 days of credit. ECF No. 14-17 at 5. She then observed that he'd received six years of imprisonment for violating his extended supervision in this case. "So obviously he's already been significantly punished for violating his extended supervision." *Id.* This was an argument for leniency, to explain to the sentencing judge that the petitioner had already been punished, at least partially. Then, counsel conceded that "[a]s far as the facts go, I can't add anything to the facts." *Id.* at 5. "At this point I think Mr. Dodd should make any further statement." *Id.*

In his elocution, the petitioner began reading what appears to be a somewhat sophisticated presentation of his various grievances with his trial proceedings, many of which are discussed elsewhere in this opinion. *Id.* at 6-11. Following that, he stated that he was thirty-two years old, with two daughters, and asked for six or seven years of confinement, with ten on extended supervision. *Id.* at 10. He also pointed out that his parole agent would verify that he had no supervision problems. Finally, he mused that he "should have had a bench trial, but I went to trial [by jury]." *Id.* at 12.

11

The judge disagreed, responding, "I don't think you should have." *Id.* The court elaborated: "I thought there was plenty of evidence in this case and I didn't find you credible in your testimony." *Id.* The sentencing judge further indicated that although he would not then rule on the petitioner's arguments seeking a new trial, it was his view, based on his twenty-five years in the criminal justice system, that the petitioner's lawyer was "one of the best trial attorneys in Milwaukee and it was not her performance in my view that led to the verdict here. There was evidence. There was a lot of it." *Id.* at 12-13.

Review of the sentencing transcript indicates two things. First, counsel performed adequately. In this case, as reflected in the prosecutor's own very brief remarks, there was no need to make a lengthy presentation. As the sentencing judge indicated, there was a lot of evidence and, as the prosecutor pointed out, it was a fairly straightforward robbery. The petitioner has yet to explain in any court what rhetorical nugget or mitigating evidence his counsel should have produced to win additional lenience from the judge. *Smith v. Brown*, 764 F.3d 790, 799 (7th Cir. 2014) ("Nor has he offered any potential mitigating evidence or argument [counsel] could have made to obtain a lower sentence.") And counsel's decision to turn quickly to the petitioner's elocution was a reasonable strategy, given that he was able to explain his personal circumstances and ask for leniency himself. In light of *Strickland*'s deferential standard, it is not difficult to imagine that counsel simply thought there would be little point in making an extended plea for leniency or adducing other facts.

Second, the transcript also reveals the absence of prejudice: the sentencing judge made no secret of his view that the petitioner was guilty and not credible. The twenty-year sentence he imposed (twelve years of incarceration followed by eight years of extended supervision) is in line with what could be expected based on the petitioner's previous seventeen-year sentence

for a similar crime. The leniency request, as voiced by the petitioner himself, was likely the only play. In short, it is hard to imagine any additional effort on counsel's part that would have affected the sentence imposed by the judge, and so even if counsel's performance were inadequate, the petitioner would be unable to demonstrate prejudice. Certainly, given the deferential standard of AEDPA, I cannot conclude that the court of appeals unreasonably applied *Strickland* in finding no ineffective assistance here.

### 4. Ineffective Assistance – Failure to Challenge DNA Analyst Testimony

The petitioner next argues that his trial counsel was ineffective for failing to impeach expert witness Margaret Cairo, who had performed DNA testing on the latex gloves found at the crime scene. The State argues that this claim is procedurally defaulted, as it was not raised in the petition for review with the Wisconsin Supreme Court. The petitioner's response is that he should be excused from the procedural default because counsel was ineffective for failing to raise the issue in the petition. ECF No. 16 at 12. But, for the reasons given in Section 1 above, that will not suffice. The court therefore cannot consider the claim on its merits.

### 5. Violation of *Brady v. Maryland* Regarding Late Production of DNA Evidence

The petitioner argues that the State failed to produce the DNA packet until the eve of trial, which he believes should be deemed a violation of *Brady v. Maryland,* 373 U.S. 83 (1963). Alternatively, he argues that his trial counsel was ineffective for failing to object to the late disclosure. Once again, however, this claim is procedurally defaulted for the reasons discussed in Section 1.

### 6. Ineffective Assistance – Failing to Suppress the Out-of-Court Identification

The petitioner next argues that trial counsel was ineffective for failing to move for suppression of the out-of-court identification made by witness J.S. He argues that the photo

13

Case 2:17-cv-01021-SCD   Filed 05/18/20   Page 13 of 18   Document 30

subtly (or in some cases possibly even not so subtly) thrust upon the witness signals or clues that lead the witness to select a predetermined suspect, the identification procedure is not likely to provide an unbiased reflection of the witness's personal knowledge. But we are convinced that in this factual situation this is not a case where the police, like a magician pushing the two of hearts upon an unwitting audience member asked to "pick a card," prodded the witnesses to select Gregory–Bey (and not some other suspect) from the photospread. Gregory–Bey has been unable to point out to us any example of evidence in the record that might even suggest that the police tipped the witnesses off to the fact that Gregory–Bey's picture was among the many photographs in the display.

*Gregory-Bey,* 332 F.3d at 1047 (citations omitted). For these reasons, there are no due process concerns with the lineup, and it is therefore impossible to find fault with counsel's failure to file a motion to suppress.

### 7. *Brady* Violation Based on Search Logs and Incomplete Video

The petitioner next argues that the State violated *Brady* by not producing a complete video recording of the robbery or search logs detailing items found during the search of the getaway vehicle. Once again, because these claims have not been presented to the Wisconsin Supreme Court, and because there is no adequate showing of cause, the claim is procedurally defaulted.

### 8. Ineffective Assistance – Failure to Challenge Chain of Custody

The petitioner's final argument is that counsel should have objected after the State did not establish the chain of custody for the latex gloves. The trial court made short shrift of this argument, finding that the claims were "speculative as there is no showing that the gloves were contaminated or tampered with in any way." ECF No. 14-3 at 6. The court of appeals agreed, finding that the testimony was uncontroverted that H.P. stated he had picked up the gloves from the floor and placed them in the garbage. ECF No. 14-7 at 10. The other store employee, J.S., had also seen the gloves on the floor immediately after the robbery. An officer

15

retrieved them and placed the gloves in inventory, and a DNA analyst with the state crime lab testified that she swabbed both sides of the gloves and found DNA matching the petitioner.

The petitioner asserts that the latex gloves with his DNA were somehow substituted by the police. But the essence of this argument is limited to a directive that the court "please see exhibits attached to initial petition F, G, H, I, K, V & W," and a statement that "Exhibit F is the key to everything." ECF No. 10 at 25; ECF No. 1 at 67-68. It is not a court's job to sort through hundreds of pages of trial testimony and exhibits to discern the essence of the petitioner's argument that the police fabricated evidence. *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1001 (7th Cir. 2004) ("[W]e will not root through the hundreds of documents and thousands of pages that make up the record here to make his case for him.")

Even if that were a court's job, to the extent the petitioner is staking his reliance on Exhibit F, which describes cream-colored latex gloves with various states of discoloration or dirt, *see* ECF No. 1-1 at 39, such an argument is hardly revelatory.. The petitioner asserts that the gloves described in Exhibit F are not the same as those in Exhibit G, which he asserts (in a handwritten note on the exhibit) are brand new gloves planted by the police "and they had H.P. lie!!" ECF No. 1-1 at 40. But H.P., J.S., and Officer Robert Crawley all testified that the gloves were found in the store. Moreover, the petitioner has not explained how the State obtained his DNA to plant on the gloves that the crime lab examined. The analyst testified that there was DNA from two people on one glove, with one person's DNA on the second glove. ECF No. 1-1 at 58-61. When she entered the DNA into the databank, it produced a "hit" to the petitioner's name. *Id.* at 62.

In sum, it is not surprising that both state courts addressing this argument found it speculative and unsupported. *See* ECF No. 14-7 at 11. From that conclusion it follows that

16

counsel was under no obligation to undertake some line of inquiry based on the petitioner's tampering/chain-of-custody theory. The state courts therefore did not unreasonably apply *Strickland* in ruling against the petitioner.

## CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Cases, this Court must "issue or deny a certificate of appealability when it enters a final order adverse to the applicant." A certificate should be issued only where the petitioner "has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). In order for a certificate of appealability to issue, a petitioner must show that "reasonable jurists" would find this Court's "assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000); *Buck v. Davis*, 137 S. Ct. 759, 773 (2017). Here, I cannot conclude that the assessment of the merits of the petitioner's claims is debatable by reasonable jurists. Moreover, where a petition is dismissed (here, in part) on procedural grounds, the petitioner must show both that reasonable jurists would "find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484. Here, no reasonable jurist would find the court's procedural rulings debatable. Accordingly, a certificate of appealability will be denied.

## CONCLUSION

For the reasons given above, the petition is **DENIED** and the case is **DISMISSED**. A certificate of appealability is **DENIED**. The clerk will enter judgment accordingly.

**SO ORDERED** this 18th day of May, 2020.

STEPHEN C. DRIES
United States Magistrate Judge